[No. 11921.   Department Two.   May 8, 1914.]

THE STATE OF WASHINGTON, on the Relation of Fred C. Brown, as Justice of the Peace in and for Seattle Precinct, King County, Plaintiff, v. THE SUPERIOR COURT FOR KING COUNTY et al., Respondents.[1]

CRIMINAL LAW—SENTENCE—COMMUTATION BY JUSTICE — STATUTES —HUSBAND AND WIFE—OFFENSES—FAILURE TO SUPPORT.   3 Rem. & Bal. Code, § 5933-2, of the "lazy husband" act, authorizing the court to change its order from time to time, in case the defendant is required to pay a weekly sum to his wife for her support, under subd. 2 of the act, has no application to the provisions for punishment by confinement in the county jail at hard labor, under subd. 3 of the act; and hence does not authorize the justice to commute a sentence once imposed under subd. 3.

SAME—SENTENCE — COMMUTATION BY JUSTICE — STATUTES—"SENTENCE" AND "CONVICTION"—HUSBAND AND WIFE—FAILURE TO SUPPORT —OFFENSES.   Subd. 3 of 3 Rem. & Bal. Code, § 5933-2, containing the expressions "where conviction is had and sentence to imprisonment imposed," "where such conviction is had during the time of such sentence," "where conviction and sentence is had" and "where such work is performed by persons under sentence," clearly indicates an intent to make a distinction between "conviction" and "sentence," so that the words "after conviction" as used in subd. 2, authorizing a judgment of weekly payments to the wife, means before sentence; and the statute empowering the justice to (1) impose a fine, (2) require payments to the wife, or (3) sentence the defendant to the county jail, judgment in any of the three alternatives is final, and precludes the justice from subsequently commuting a sentence of imprisonment.

Certiorari to review a judgment of the superior court for King county, Frater, J., entered March 20, 1914, granting a writ of prohibition, upon overruling a motion to quash the same.   Affirmed.

*Tucker & Hyland*, for relator.

*John F. Murphy, Everett C. Ellis, Thomas J. L. Kennedy*, and *S. H. Steele*, for respondents.

[1]Reported in 140 Pac. 555.

Morris, J.—This writ calls for an interpretation of chapter 28, p. 71, Laws of 1913 (3 Rem. & Bal. Code, § 5933-1 *et seq.*), known as the "Lazy Husband" act. The relator is one of the justices of the peace for Seattle precinct. On October 14, 1913, a complaint was filed by Viola Mikkelson, charging her husband, James Mikkelson, with wilfully failing and neglecting to furnish support for his wife and minor children. Under this complaint, James Mikkelson was taken into custody, and on the 20th of October, a hearing was had upon the complaint, when the justice found the defendant guilty as charged, and sentenced him to imprisonment in the King county jail for the period of 182 days at hard labor; and further ordered that the defendant be placed at work upon the public roads or highways during the term of 182 days, and that the board of county commissioners pay to the wife $1.50 per day out of the general fund for the support of the said wife and children. A commitment was duly issued to the sheriff, and in pursuance of the judgment and the commitment, Mikkelson was placed at work upon the public highways.

Subsequently, and on February 21, 1914, the relator issued an order directed to the sheriff, commanding him to bring the body of James Mikkelson before him, at his court room, on the 25th day of February, 1914; whereupon the prosecuting attorney of King county sued out a writ of prohibition in the lower court, alleging in his petition, in substance, that the purpose and intent of the relator in ordering Mikkelson to be brought before him was to commute the unexpired jail sentence. The application for the writ coming on to heard in the lower court, relator appeared and moved to quash, which motion was denied. Relator electing to stand upon his motion, final judgment granting the writ was entered. Relator now comes to this court seeking this writ to review the decision of the lower court in granting the writ of prohibition.

The application for the writ here suggests but one question: Did the relator have power to suspend or commute the sentence of James Mikkelson? Leaving out any question as to the validity of a statute attempting to confer upon justices of the peace the power to commute sentences, let us examine this statute to ascertain if such power can be inferred from its language. The act, so far as it is here material, is as follows:

"Sec. 2. In any case numerated in the previous section, the court may render one of the following orders:

"1st: Should a fine be imposed it may be directed by the court to be paid in whole or in part to the wife, or to the guardian, or to the custodian of the child or children, or to an individual appointed by the court as trustee.

"2nd: Before trial, or after conviction, with the consent of the defendant, the court, in its discretion, having regard to the circumstances and to the financial ability or earning capacity of the defendant, shall have the power to make an order, which shall be subject to change by it from time to time as circumstances may require, directing the defendant to pay a certain sum weekly during such time as the court may direct, to the wife or to the guardian, or custodian of the minor child or children, or to an individual appointed by the court, and to release the defendant from custody on probation during such time as the court may direct, upon his or her entering into a recognizance, with or without sureties, in such sum as the court may direct. The condition of the recognizance to be such that if the defendant shall make his or her appearance in court whenever ordered to do so, and shall further comply with the terms of the order and of any subsequent modification thereof, then the recognizance shall be void, otherwise to remain in full force and effect.

"3rd: Where conviction is had and sentence to imprisonment in the county jail is imposed, the court may direct that the person so convicted shall be compelled to work upon the public roads or highways, or any other public work, in the county where such conviction is had, during the time of such sentence. And it shall be the duty of the board of county commissioners of the county where such conviction and sentence is had, and where such work is performed by persons under sentence to the county jail, to allow and order

the payment, out of the current fund, to the wife, or to the guardian, or the custodian of the child or children, or to an individual appointed by the court as trustee, at the end of each calendar month, for the support of such wife, child, or children, ward or wards, a sum not to exceed one and fifty one-hundredths dollars for each day's work of such person." 3 Rem. & Bal. Code, § 5933-2.

Manifestly such power is not to be gathered from the words "shall be subject to change by it from time to time as circumstances may require," as found in subd. 2 of § 2 as that language unquestionably referred to a change in the order requiring the weekly payment of money for the support of the wife or children. Neither can it be bottomed upon the words "before trial or after conviction," as found in the same subdivision; for, notwithstanding the strenuous argument of relator in support of his contention that the phrase "after conviction" means after sentence, the act, when read as a whole, negatives such a contention. Numerous cases have been cited as to the proper meaning to be given the word "conviction" in criminal statutes; whether it means the finding of guilty by either court or jury, or the status of a defendant after the finding of guilt and the imposition of judgment and sentence. It is enough to say that sometimes it means the one thing and sometimes it means the other, and we must look to the context to ascertain the real meaning to be given in the particular case. Looking to subd. 3, we find this language:

"Where conviction is had and sentence to imprisonment in the county jail is imposed, . . . where such conviction is had, during the time of such sentence. . . . where such conviction and sentence is had, . . . where such work is performed by persons under sentence."

These expressions clearly indicate that, in framing this act, the legislature had in mind a clear distinction between "conviction" and "sentence;" that, by conviction, a finding of guilt was meant; and that, by sentence, was meant the

judgment of guilt and imposition of penalty. So that the words "after conviction," in subd. 2, must be read as meaning after conviction and before the pronouncement of sentence. It is evident that, upon a determination of guilt, § 2 confers three distinct powers upon the justice of the peace in making up his final order or judgment: (1) He may impose a fine; (2) he may require the defendant to enter into a recognizance to pay a certain sum weekly during such time as the court may direct, to the wife or other person named by the court, in which case the defendant may be released from custody; (3) he may sentence the defendant to the county jail and direct that such imprisonment shall be worked out upon the public highway or other public work. The justice of the peace is thus provided with three alternatives in making up his final judgment. He may choose any one of the three. But when he has chosen and made his judgment final, his power is at an end.

We, therefore, conclude that the relator had no power to order the defendant before him for the purpose of commuting his sentence, and that the writ below was properly issued. Judgment affirmed.

CROW, C. J., ELLIS, PARKER, and GOSE, JJ., concur.