[No. 39431. Department One. November 9, 1967.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE L. SMITH, *Appellant*.*

*Reported in 434 P.2d 5.

---

[4]We have given consideration to respondent's motion for an order striking appellant's reply brief. The motion is denied.

*William L. Bennett* and *Cooney & Cooney,* for appellant.

*Sidney R. Buckley* and *Robert D. Skidmore,* for respondent.

OTT, J.†—George L. Smith was found guilty by a jury in Stevens County of committing the crime of second degree burglary. Thereafter a supplemental habitual criminal information was filed which alleged that George L. Smith had previously been convicted in the state of Washington of the following felonies:

| | |
|---|---|
| Grand Larceny | March 21, 1941 |
| Second Degree Burglary and Grand Larceny | June 11, 1943 |
| Voluntarily Riding in a Stolen Motor Vehicle | October 11, 1944 |
| Negligent Homicide | August 19, 1950 |
| Larceny by Check | January 24, 1966 |

On the supplemental information Mr. Smith waived a jury trial and the cause was tried to the court. He was found to be an habitual criminal, was sentenced to life imprisonment, and from the entry of judgment George L. Smith has appealed.

His first assignment of error is that the sheriff and his deputies entered and searched his room in the Colville Hotel without his consent and without a search warrant. The record establishes that Mr. James R. Northrup, a parole officer, and Mr. George L. Smith were walking down the stairs from Mr. Smith's room on the third floor of the hotel when they were met by Sheriff Albert E. Holter. While the sheriff was talking with Mr. Smith, Mr. Ray Price, the owner of the burglarized store, and Deputy Sheriff Jerry R. Mugaas arrived. The sheriff requested permission to enter George L. Smith's room. Mr. Smith was thereupon advised by Mr. Northrup that he need not permit the sheriff to enter the room and could "force the sheriff to get

---

†Judge Ott is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

a search warrant." The sheriff again said, "Well is it all right if we look at your room?" Mr. Smith answered, "I guess we might as well." After he unlocked the door Mr. Smith said, "Come on in." Much of the stolen clothing was in plain sight. Other stolen items were found in the dresser drawers and elsewhere in the room.

A search without a warrant does not itself prove an invasion of one's constitutional rights. The necessity for a search warrant is a constitutional guarantee which can be waived. *In re McNear v. Rhay*, 65 Wn.2d 530, 536, 398 P.2d 732 (1965); *State v. Greco*, 52 Wn.2d 265, 324 P.2d 1086 (1958). The duty to establish that there was a waiver rests upon the state. Whether there has been a waiver is a factual issue. Where the evidence of waiver is in conflict, the factual findings of the trial court, upon review, are given great weight. When constitutional rights are in issue, this court will make an independent examination of the record for the purpose of determining whether there has been a denial of the accused's constitutional rights. *In re McNear v. Rhay, supra.*

At the hearing to suppress the evidence, held in absence of a jury under Rule of Pleading, Practice and Procedure 101.20W, RCW vol. 0, the appellant testified that he was well aware of his constitutional rights at the time of the alleged unlawful search and at the time of his arrest. In addition to this knowledge, he was expressly admonished by Mr. Northrup that he need not permit the officers to enter his room without a search warrant and could require that one first be obtained. With this actual knowledge of his constitutional rights, together with the admonition of Mr. Northrup made prior to the entry, we are convinced, as was the trial judge, that the consent to enter appellant's room was unequivocally, specifically, freely and intelligently given.

Appellant next asserts that the court erred in permitting the officers to testify relative to his admission of guilt made at the time of the arrest for the reason that he was not

advised of his constitutional right to remain silent prior to the time the admissions were made. At the hearing on the motion to suppress these statements, mentioned above, three officers testified that Mr. Smith was informed of his right to remain silent, to have counsel and to use the telephone. The appellant testified that he was fully aware of his constitutional rights, but asserted that the officers had failed to so inform him on this occasion.

The court entered findings of fact and conclusions of law that the officers had informed appellant of his right to remain silent, his right to counsel and all of his constitutional guarantees. There is ample evidence in the record which sustains the trial court's factual determination. The trial court did not err in denying the motion to suppress the evidence of appellant's oral admissions of guilt.

Appellant's next assignment of error is that the court erred in failing to grant a mistrial when evidence was introduced from which the jury could infer that Mr. Northrup was appellant's parole officer.

In this regard, the prosecuting attorney, in his opening statement to the jury, stated: "The probation officer went up to him (George L. Smith) and folded down his trousers to see if in the plastic band of the trousers he had a key."

The second occasion of the alleged inference that Mr. Northrup was appellant's parole officer occurred when Mr. Northrup was a witness for the state and testified as follows:

Q. And then the three of you left? A. No, Deputy Mugaas was there just a couple of minutes, George and I remained and discussed his marital situation, his past drinking, past employment, reasons for lack of employment and an injury on the job, and his plans for the future.

The third alleged inference occurred when the following question was asked Mr. Northrup on cross-examination by counsel for appellant:

Q. . . . At the time that you and the others were in the room with him, was there anyone there representing

him as counsel or otherwise? A. Me. Q. Were you representing him? A. I was, and advising him. . . . Q. (By Mr. Bennett) Isn't it a fact that in your previous testimony in this case in the absence of the jury that you never held yourself out as being a representative of the defendant in any capacity? A. That's incorrect. I made the statement that I advised Mr. Smith of his rights for his protection.

Counsel for appellant made proper motions for mistrial. The court denied the motions, giving as its reasons that "[n]o probable inference could be drawn from the testimony on direct as to the status of the witness and his relationship in the particular case."

Appellant relies upon *State v. Taylor*, 60 Wn.2d 32, 371 P.2d 617 (1962). In that case there was direct testimony that the appellant was a parolee. The trial court granted a new trial for the reason that the direct reference to the defendant being a parolee in his opinion prejudiced the minds of the jury and thereby denied the defendant a fair trial. This court sustained the trial court's granting a new trial, holding that prejudicial error occurred when there was injected into the record direct evidence that defendant had a parole officer.

In the instant case the trial court denied the motion to dismiss for the reason that no probable inference could be drawn from the testimony as to the status of Mr. Northrup.

We held in the *Taylor* case, *supra*, that a much stronger showing of abuse of discretion will ordinarily be required to set aside an order granting a new trial than one denying a new trial. This is because the trial court, in granting a motion for a new trial, has a distinct advantage in that the trial court observes the atmosphere of the courtroom and the effect, if any, that an alleged prejudicial statement may have had upon the jury. This court noted in the *Taylor* case, *supra*, at 41:

If this were an appeal from an order denying a new trial, the cases cited by the state would be applicable because the appellate court in those instances relied upon the determination of the trial court that there was no prejudice.

Applying the rule announced in the *Taylor* case to the instant case, the trial judge, in observing the courtroom atmosphere and the surrounding circumstances resulting from the alleged inference and its effect on the jury, determined that no prejudicial error had resulted from the inference and denied the motion for a new trial.

■ The constitution guarantees an accused a fair trial measured by reasonable standards. *State v. Willis*, 67 Wn.2d 681, 409 P.2d 669 (1966). An alleged trial error, to merit the granting of a new trial, must be so prejudicial as to have denied the accused a fair trial. *State v. Willis, supra; State v. Louie*, 68 Wn.2d 304, 413 P.2d 7 (1966). In determining whether the error is prejudicial, consideration must be given to all the facts and circumstances presented in the trial of the cause. An error, to be prejudicial error, must be one which probably would have changed the result. *State v. Britton*, 27 Wn.2d 336, 178 P.2d 341 (1947).

Applying these tests to the instant case, the evidence of guilt was overwhelming. The items stolen were positively identified by the owner of the burglarized store. They were found in the possession of the accused who admitted stealing them and described the manner in which he had gained entrance to the store. Except for the plea of not guilty, these facts remained unchallenged.

Applying the rules above announced to the instant case, we hold that the record before us establishes that the trial court did not abuse its discretion in denying appellant's motion for a new trial.

■ Appellant next assigns error to the refusal of the court to give two proposed instructions. Mr. Smith did not elect to become a witness in his own behalf. The statements that he had stolen property and had gained admission to the building by opening a window were made in the presence of three officers.

Appellant proposed the following instruction:

> You are instructed to view with caution the testimony of any witness which purports to relate an oral admission of the defendant or an oral confession by him.

The consideration the trier of the facts is to give evidence of oral admissions or oral confessions allegedly made by an accused is governed by the same rules as apply to any other evidence. The court instructed the jury that the presumption of innocence must abide with the defendant until the jury is satisfied beyond a reasonable doubt of his guilt and that such a presumption is a substantial part of the law of the land; that it was the duty of the state to prove each of the elements of the crime beyond a reasonable doubt; that no inference of guilt is to be presumed from defendant's failure to become a witness in his own behalf.

Instruction No. 9 provided:

The jury are the sole judges of the facts in the case and also of the credibility of the witnesses, and of the weight and value to be given to their testimony. In determining as to the credit you should give to a witness and the weight and value you should attach to his or her testimony you may take into consideration the conduct and appearance of the witness on the stand; the motive actuating the witness in testifying; the witness's relation to or feeling for or against the plaintiff or defendant, as the case may be; the probability of the witness's statements; the opportunity the witness had to observe or be informed as to the matters respecting which such witness gives testimony; and the inclination of the witness to speak truthfully or otherwise as to the matters within the knowledge of such witness. All these matters being taken into account with all the other facts and circumstances given in evidence, it is your province to give to the testimony of each witness such value and weight as you deem proper. If upon the consideration of all the evidence you conclude that any witness has willfully sworn falsely as to any material matter involved in the trial, you may reject or treat as untrue the whole or any part of such witness's testimony, except insofar as it may be corroborated by other credible testimony in the case.

Instruction No. 10 provided:

You are instructed, members of the jury, that you may give such weight and credibility to any purported admissions or confessions, as you see fit, in view of the surrounding circumstances.

Appellant's cited criminal cases do not support his contention that under the facts of this case the requested instruction should have been given.

The instructions quoted above informed the jury of the consideration to be given all of the evidence including that which related to the accused's confessions.

The remaining proposed instruction was as follows:

> You are instructed that mere possession of goods shortly after they were stolen is not sufficient to sustain a conviction for burglary.

The trial court did not err in refusing to give this proposed instruction for the reason that it infers that the "mere possession" of the stolen goods was the only evidence of guilt. There was much more evidence for the jury to consider than "mere possession" of stolen goods.

We have considered appellant's remaining assignments of error and find them to be without merit.

Judgment is affirmed.

FINLEY, C. J., HILL and ROSELLINI, JJ., concur.

WEAVER, J., concurs in the result.

-----------

January 3, 1968. Petition for rehearing denied.